**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Marideth Pasamba, | ) | No.  CV-08-0247-PHX-NVW |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| HCCA International, Inc.; Bragg, | ) | |
| Mansfield & Stegall, a partnership; Rick | ) | |
| G. Mansfield; Drescher & Sharp, P.C., a | ) | |
| professional corporation; Robert H. | ) | |
| Laird, Jr.; Karen Fleming; Bonnie | ) | |
| Young; | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the court is the Motion to Dismiss (RICO Claims) (doc. #5).

**I.     Legal Standard**

        To avoid dismissal under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege facts
sufficient "to raise a right to relief above the speculative level, on the assumption that all
the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v.
Twombly*, 127 S. Ct. 1955, 1965 (2007) (citations and footnote omitted).  Plaintiff is
required to plead "only enough facts to state a claim to relief that is plausible on its face,"
but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires
more than labels and conclusions, and a formulaic recitation of the elements of a cause of
action will not do." *Id.* at 1964-65, 1974.

## II. Facts Assumed True

Plaintiff is a citizen of the Philippines.  Defendant HCCA International, Inc. ("HCCA") represented to her that it would pay for her to be licensed as a Registered Nurse in the United States, obtain a work visa for her to enter and work in the United States, and employ her as a nurse in a hospital in the United States.  HCCA told Plaintiff she would receive wages comparable to those paid to nurses with her experience in the location where she was employed.  On March 23, 2006, Plaintiff signed an employment contract with HCCA and a promissory note.  Under the agreement and note, if Plaintiff's employment was terminated in less than two years, Plaintiff was required to reimburse HCCA a maximum of $10,000 for its expenses and costs directly attributable to Plaintiff's training, file preparation and maintenance, travel and other expenses and fees as well as HCCA's overhead and operating costs.  On April 3, 2006, HCCA required Plaintiff to sign an amendment to the promissory note that increased the maximum amount payable to $60,000 for no additional consideration.

Six months later, in October 2006, Plaintiff moved from England to Arizona and began working for HCCA as a nurse at a hospital for $21.46 per hour.  Plaintiff subsequently learned that registered nurses with her experience were paid $30 or more per hour.  Plaintiff's employment was terminated on May 5, 2007.  On June 23, 2007, Plaintiff began working for another hospital for $33 per hour.

In June 2007, Plaintiff received a letter dated June 5, 2007, from Defendants Bragg, Mansfield & Stegall and Rick Mansfield, demanding payment on behalf of HCCA of the "principal sum of $60,000 for certain costs and expenses advanced to you" in accordance with the April 3, 2006 employment agreement and promissory note.  In November 2007, Plaintiff received a letter dated October 29, 2007, from Defendants Drescher & Sharp and Robert H. Laird, demanding payment on behalf of HCCA of the "principal sum of $60,000 for certain costs and expenses advanced to you" in accordance with a March 2006 employment agreement and promissory note.  The October 29, 2007 letter showed a copy was sent to HCCA employee Karen Fleming.

1    Plaintiff alleges Defendant Bonnie Young was an employee and agent of HCCA
2    and she made the decision to wrongfully terminate Plaintiff's employment for
3    communicating with hospital management without an HCCA representative present.
4    Plaintiff alleges Defendant Karen Fleming was an officer, Secretary, employee, and agent
5    of HCCA and was the HCCA employee who carried out the pattern of misconduct
6    involving the collection letters from lawyers.

7    Plaintiff, upon information and belief, further alleges that Defendants have
8    engaged in the same or similar conduct "with regard to the hundreds of other foreign
9    nationals that HCCA employs in Arizona and in other states as nurses, although many
10   have not been terminated and remain employed at substandard wages out of fear of
11   reprisals and litigation threats from HCCA and that HCCA has been engaging in the
12   alleged conduct for more than two years in Arizona and in the United States."  In
13   response to the Motion to Dismiss, Plaintiff states that she could allege, but has not, that
14   she has been told by former and current HCCA foreign national nurse employees that
15   HCCA uses a "bait and switch" tactic to induce nurses to sign an employment agreement
16   with a $10,000 promissory note and then require them to sign a $60,000 note to deter
17   them from seeking higher paying positions after they come to the United States.

18   **III.   Plaintiff's RICO Claims**

19   In her two RICO claims, Plaintiff has alleged Defendants violated 18 U.S.C.
20   §§ 1962(c) and (d):

21       (c)  It shall be unlawful for any person employed by or associated with any
22       enterprise engaged in, or the activities of which affect, interstate or foreign
         commerce, to conduct or participate, directly or indirectly, in the conduct of
23       such enterprise's affairs through a pattern of racketeering activity or
         collection of unlawful debt.

24       (d)  It shall be unlawful for any person to conspire to violate any of the
         provisions of subsection (a), (b), or (c) of this section.
25

26   An "'enterprise' includes any individual, partnership, corporation, association, or other
     legal entity, and any union or group of individuals associated in fact although not a legal
27
     entity."  18 U.S.C. § 1961(4).  A "'pattern of racketeering activity" requires at least two
28

- 3 -

1   acts of racketeering activity, one of which occurred after the effective date of this chapter

2   and the last of which occurred within ten years (excluding any period of imprisonment)

3   after the commission of a prior act of racketeering activity."  18 U.S.C. § 1961(5).

4         "Racketeering activity" includes "(A) any act or threat involving ... extortion ...

5   which is chargeable under State law and punishable by imprisonment for more than one

6   year; (B) any act which is indictable under any of the following provisions of title 18,

7   United States Code:  ... sections 1581-1592 (relating to peonage, slavery, and trafficking

8   in persons)."  18 U.S.C. § 1961(1).

9         The Complaint includes the following allegations:

10      50.    At all relevant times, HCCA and the other defendants (the
    "Conspirators") formed an association-in-fact for the purpose of

11  committing theft of services by extortion pursuant to Arizona law,
    including but not limited to A.R.S. § 12-1804(A)(6)[1] and (8) and

12  § 12-1804(A)(4) [A.R.S. § 23-202 "conduct constituting an
    offense"], and pursuant to federal law, including but not limited to

13  peonage in violation of 18 U.S.C. §§ 1581, 1584, 1589, 1590.  This
    association-in-fact was an "enterprise" within the meaning of RICO

14  18 U.S.C. § 1961(4).

15      55.    As a result of HCCA and the other Conspirators' violation of 18
    U.S.C. § 1962(c), plaintiff has had services stolen and suffered

16  damages from the federal peonage misconduct and suffered other
    damages, in an amount according to proof.

17

18        A.R.S. § 13-1804 defines "theft by extortion" as "knowingly obtaining or seeking

19  property or services by means of a threat to do in the future ... (4) Engage in other

20  conduct constituting an offense. ... (6) Expose a secret or an asserted fact, whether true or

21  false, tending to subject anyone to hatred, contempt or ridicule or to impair the person's

22  credit or business. ... (8) Cause anyone to part with property."  A.R.S. § 23-202 makes it

23  "unlawful for a person charged or entrusted by another with the employment or

24  continuance in employment of any workmen or laborers to demand or receive, either

25  directly or indirectly, from a workman or laborer employed or continued in employment

26  through his agency or under his direction or control, a fee, commission or gratuity of any

27                             _____

28        [1]  The court assumes the reference to A.R.S. § 12-1804 should be § 13-1804.

- 4 -

1   kind as the price or condition of the employment of the workman or laborer, or as the

2   price or condition of his continuance in such employment."

3          The RICO predicate acts identified in 18 U.S.C. §§ 1581, 1584, 1589, 1590 are

4   peonage, involuntary servitude, forced labor, and trafficking with respect to peonage,

5   slavery, involuntary servitude, or forced labor.  In her response to the Motion to Dismiss,

6   Plaintiff states, "If HCCA had simply paid a comparable wage, there would be no

7   claims," and "[t]he $60,000 promissory note and the defendants' threats to sue to enforce

8   it are the essence of plaintiff's racketeering claims."  (Doc. #10 at 3, 10.)

9          In addition to the two RICO claims against all Defendants, Plaintiff's Complaint

10  alleges four counts against HCCA for declaratory relief, fraudulent misrepresentation and

11  inducement, fraudulent concealment, and wrongful discharge.

12  **IV.    Analysis**

13          **A.    Plaintiff Has Not Alleged Facts That Would Establish an Association-
                    in-Fact Enterprise.**

14

15  Defendants argue that Plaintiff has not alleged a separate "enterprise" and has

    failed to sufficiently allege an association-in-fact.  Plaintiff responds:

16

17          HCCA is in the lawful business of recruiting and employing nurses whose
            employment contract gives them the right to terminate employment at any
18          time.  The RICO enterprise alleged is not HCCA, but is an association-in-
            fact of a group of persons, including but not limited to the named
19          defendants, organized to coerce (peonage/involuntary servitude/forced
            labor) and extort the services of these nurses for a two year period.  The
20          alleged multiple cases of coercion and extortion [Complaint § 21] are the
            unlawful predicate acts that compose the pattern of racketeering.

21  (Doc. #10 at 7.)

22          "'Enterprise' and 'pattern of racketeering activity' are separate elements that

23  require separate proof."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 549 (9th Cir. 2007).

24  "[A]n associated-in-fact enterprise under RICO does not require any particular

25  organizational structure, separate or otherwise."  *Id.* at 551.  "[A]n associated-in-fact

26  enterprise is a group of persons associated together for a common purpose engaging in a

27  course of conduct.  To establish the existence of such an enterprise, a plaintiff must

28  provide both evidence of an ongoing organization, formal or informal, and evidence that

the various associates function as a continuing unit." *Id.* at 552 (internal quotations and citations omitted).

First, Plaintiff must allege facts that make it plausible that Defendants associated together for a common purpose.  Plaintiff has not alleged any common purpose among HCCA, two HCCA employees/agents, two attorneys who each wrote a single demand letter, and the two law firms that employed the two letter-writing attorneys.  Plaintiff has not alleged that any of the Defendants other than HCCA have benefitted from the alleged racketeering activity.  Plaintiff alleges that HCCA received $45 per hour for every hour Plaintiff worked, paid her$21.46 per hour, and had minimal overhead costs for "this cash cow," but concedes "[o]f course, there is nothing wrong with making a profit." (Doc. #1, Exh. A, Complaint, ¶ 17.)  Plaintiff further alleges that once foreign national nurses arrive in Arizona and learn that HCCA pays them less than they would earn if employed directly by a hospital, they would quit working for HCCA, earn more money, pay HCCA the $10,000 owed, and realize a substantial net gain, so HCCA compelled them to sign a new note for $60,000 to force them to complete their two-year employment commitment.  (*Id.*)

Second, Plaintiff must allege facts that make plausible the existence of an ongoing organization in which Defendants function as a continuing unit.  "An ongoing organization is a vehicle for the commission of two or more predicate crimes." *Id.* at 552 (internal quotations and citations omitted).  "The continuity requirement does not, in itself, require that every member be involved in each of the underlying acts of racketeering, or that the predicate acts be interrelated in any way.  Instead, the continuity requirement focuses on whether the associates' behavior was ongoing rather than isolated activity." *Id.* at 552-53 (internal quotations and citations omitted).  Even if Plaintiff's allegation that HCCA employs hundreds of foreign nationals as nurses in Arizona at substandard wages sufficiently alleged the commission of two or more predicate crimes, which it does not, Plaintiff does not allege that any of the Defendants other than HCCA functioned as a continuing unit.  Plaintiff alleges each of two defendant lawyers sent one

1   collection letter.  That cannot be evidence that the associates' behavior was ongoing

2   rather than isolated.

3         **B.**    **Plaintiff Has Not Alleged Facts That Show Each Defendant Conducted**
              **or Participated in the Conduct of the Affairs of Such Enterprise's**

4                 **Affairs Through a Pattern of Racketeering Activity.**

5         To be liable under 18 U.S.C. § 1962(c), one must have some part in directing the

6   enterprise's affairs and participate in the operation or management of the enterprise.

7   *Reves v. Ernst & Young*, 507 U.S. 170, 179, 183, 185 (1993).  If the enterprise is "an

8   association-in-fact of a group of persons, including but not limited to the named

9   defendants, organized to coerce (peonage/involuntary servitude/forced labor) and extort

10  the services of these nurses for a two year period," Plaintiff has not alleged that any

11  Defendant other than HCCA had some part in directing the enterprise's affairs.

12        Moreover, Plaintiff has not alleged that any Defendant other than HCCA had any

13  involvement in coercing Plaintiff's peonage/involuntary servitude/forced labor.  She

14  alleges only their participation in her termination and HCCA's collection letters.

15        **C.**    **Plaintiff Has Not Alleged Facts That Show Defendants Committed Any**
              **RICO Predicate Acts.**

16

17        The Complaint alleges as the predicate for the RICO claims:  "committing theft of

    services by extortion pursuant to Arizona law, including but not limited to A.R.S.

18  § 1[3]-1804(A)(6) and (8) and § 1[3]-1804(A)(4) [A.R.S. § 23-202 'conduct constituting

19  an offense'], and pursuant to federal law, including but not limited to peonage in violation

20  of 18 U.S.C. §§ 1581, 1584, 1589, 1590."  (Doc. #1, Exh. A, Complaint, ¶ 50.)  Merely

21  stating these predicate acts as the basis for RICO claims does not allege enough facts to

22  state a plausible claim.  The facts Plaintiff has pled do not establish involuntary servitude,

23  peonage, forced labor, or trafficking with respect to peonage, slavery, involuntary

24  servitude, or forced labor under federal law or theft by extortion under Arizona law.

25        Plaintiff alleged that, while she was in England, HCCA told her it would obtain a

26  work visa for her to enter and work in the United States and would employ her to work in

27  a hospital in the United States on the condition that she commit to a two-year term of

28

- 7 -

employment and reimburse HCCA for certain costs in the event the employment
terminated prematurely.  Plaintiff alleged that HCCA told her these conditions for
employment at the time she signed the employment agreement and also warned her she
would be "in danger of being deported" if her employment terminated.  Plaintiff alleged
that a few weeks later, which was six months before she actually moved to the United
States, HCCA required her to sign an amendment to the promissory note, which increased
the maximum on HCCA's reimbursement from $10,000 to $60,000, "or she would not get
the visa and the job in the United States."  Plaintiff alleges she "signed the $60K Note
under duress, including the threat of having her visa process terminated to her detriment if
she wanted to obtain a subsequent United States visa and the threat of owing $10,000 on
the first promissory note."  Plaintiff does not dispute, however, that the promissory note
she signed expressly limited her obligation to repay HCCA for the expenses HCCA
incurred for her benefit.  Further, Plaintiff's only allegations regarding threats of
deportation refer to communications before she was granted a work visa, moved to the
United States, and began employment.  Plaintiff does not allege she was forced to come to
the United States and work in a hospital here or that she was prevented from quitting after
she began working in the United States.

        To plead involuntary servitude under 18 U.S.C. § 1584, Plaintiff must allege facts
that would establish "compulsion of services by the use or threatened use of physical or
legal coercion."  *United States v. Kozminski*, 487 U.S. 931, 953 (1988).  "The term
'involuntary servitude' necessarily means a condition of servitude in which the victim is
forced to work for the defendant by the use or threat of physical restraint or physical
injury, or by the use or threat of coercion through law or the legal process."  *Id.* at 952;
*see also id.* at 943 (in every case in which the Court found involuntary service under
Thirteenth Amendment "the victim had no available choice but to work or be subject to
legal sanction").  Plaintiff contends she "has alleged threats of deportation and legal
action to collect an unreasonable debt, far outside the normal legal consequences of
termination of employment."  However, she has not alleged any threats of deportation or

1   legal action that forced her to work.  In fact, she claims she was wrongfully discharged.

2   She has alleged only that HCCA warned her about potential deportation and/or legal

3   action before she began working and made threats of legal action after she no longer

4   worked for HCCA.  She has not alleged she had no choice but to work or be subject to

5   legal sanction.  Based on her allegations, if Plaintiff had refused to sign the amendment to

6   the promissory note and HCCA terminated her employment agreement, there would have

7   been no possibility of deportation, and if HCCA attempted to enforce the original

8   promissory note, Plaintiff could have refused if it was unenforceable or could have paid

9   HCCA the expenses it had incurred in the few weeks since she signed it.

10      Peonage is a form of involuntary servitude in which "the victim is coerced by

11  threat of legal sanction to work off a debt to a master."  Plaintiff's allegations do not state

12  a claim under 18 U.S.C. § 1581 for peonage any more than they do a claim for

13  involuntary servitude.

14      To plead forced labor under 18 U.S.C. § 1589, Plaintiff must allege facts that

15  would prove HCCA obtained her labor or services by means of the abuse or threat of

16  abuse of law or the legal process.  Whatever Defendants did after terminating Plaintiff's

17  employment could not have forced her to continue working for HCCA, and Plaintiff has

18  not alleged that she continued working for HCCA because of threats of legal action made

19  during her employment.  Moreover, warning of adverse but legitimate consequences to

20  terminating her employment prematurely would not constitute abuse of process.  *See*

21  *United States v. Bradley*, 390 F.3d 145, 151 (1st Cir. 2004).

22      To plead trafficking with respect to peonage, slavery, involuntary servitude, or

23  forced labor, Plaintiff must allege facts that would prove peonage, slavery, involuntary

24  servitude, or forced labor.  18 U.S.C. § 1590.  As explained above, she has not.

25      To plead theft by extortion under A.R.S. § 13-1804, Plaintiff must allege facts that

26  would prove that Defendants knowingly obtained or sought to obtain property or services

27  by making certain types of threats.  Plaintiff did not allege that HCCA threatened to

28  charge a gratuity as a condition of employment or of continuance of employment as

required by A.R.S. §§ 13-1804(4) and 23-202, only that before beginning employment Plaintiff was required to agree to reimburse HCCA for certain expenses it had incurred and only if her employment terminated prematurely.  Plaintiff did not allege that HCCA sought to obtain or did obtain her services by threatening to notify immigration authorities if she did not begin employment, but rather that HCCA would notify immigration authorities if her employment by HCCA terminated.  She could not have been deported if she never came to the United States to work for HCCA.

Plaintiff's attempt to explain how the facts she pled could establish RICO claims relies primarily on conclusory and speculative allegations based on hearsay regarding other foreign national nurses.  To have standing to bring a civil RICO claim under 18 U.S.C. § 1964(c) for damages, Plaintiff must show that (1) her alleged harm qualifies as injury to his business or property and (2) her harm was "by reason of" the RICO violation, which requires her to establish proximate causation.  *Canyon County v. Syngenta Seeds*, Inc., 519 F.3d 969, 972 (9th Cir. 2008).  Plaintiff has not alleged any facts establishing that Defendants' conduct toward other foreign national nurses proximately caused injury to Plaintiff's business or property.  *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (§ 1964(c) requires direct relation between the injury asserted and the injurious conduct alleged).

**D.    As Alleged by Plaintiff, the Demand Letters Do Not Violate RICO.**

The First Amendment Petition Clause precludes a RICO claim based on sending a prelitigation demand to settle legal claims that do not amount to a sham.  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 942 (9th Cir. 2006).  The Complaint does not allege any facts that would establish the demand letters threatened sham litigation.  Plaintiff argues:

> It is plausible and may reasonably be inferred from the allegations that the attorneys who wrote the demand letters knew they were shams and were told by the other defendants who obtained their cooperation they would not be called upon to file actions on the notes; that the purpose was to scare the employees in Arizona.  The RICO enterprise obtained the services of plaintiff and similarly situated employees by threatening frivolous actions.

1   (Doc. #10 at 10.)  Even if Plaintiff had pled what she wants the court to infer, the purpose

2   of the letters to Plaintiff could not have been to obtain her services because they were sent

3   after HCCA terminated her employment.  Further, litigation to enforce Plaintiff's

4   agreement to repay HCCA up to $60,000 for its expenses related to Plaintiff's

5   employment is not objectively baseless.

6         **E.**    **Plaintiff Fails to State a RICO Conspiracy Claim Under§ 1962(d).**

7         To state a claim under 18 U.S.C. § 1962(d), Plaintiff must allege facts that would

8   show Defendants conspired to violate any of the provisions of subsection (a), (b), or (c) of

9   that section.  As concluded above, Plaintiff has failed to do so.

10        **F.**    **Amending the Complaint Would Be Futile.**

11        After dismissing claims under Fed. R. Civ. P. 12(b)(6), the court does not abuse its

12  discretion by denying leave to amend where the pleadings before the court demonstrate

13  that amendment would be futile.  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d

14  729, 738 (9th Cir. 1987).  Even if Plaintiff amended her complaint to include those

15  allegations she argued she could have made but did not, the alleged facts would not state

16  a plausible claim.

17        IT IS THEREFORE ORDERED that the Motion to Dismiss (RICO Claims) (doc.

18  #5) is granted without leave to amend the Complaint.

19        DATED this 24th day of June, 2008.

20

21

22

23  _____

24                   Neil V. Wake
           United States District Judge

25

26

27

28